UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PACIFIC FISHERIES, INC.,

    Plaintiff,

v.

INTERNAL REVENUE SERVICE,

    Defendant.

CASE NO. C04-2436JLR

ORDER

    This matter comes before the court on Defendant Internal Revenue Service's ("IRS") motion for summary judgment (Dkt. # 43) and its supplemental declaration (Dkt. # 55) filed in response to the court's request in its March 31, 2009 order. Having reviewed the papers, including the supplemental briefing submitted by the parties and heard the argument of counsel, for the reasons that follow, the court GRANTS the motion for summary judgment.

## I. BACKGROUND

    As the parties are well aware of the facts in this matter, the court incorporates by reference the background section found in its March 31, 2009 order.

## II. ANALYSIS

    Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material

ORDER – 1

fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). This court conducts a de novo review of the IRS's response to the Freedom of Information Act ("FOIA") request. 5 U.S.C. § 552(a)(4)(B); *United States Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989). The burden is on the agency to show that its response was adequate. *Reporters Comm.*, 489 U.S. at 755.

The court has already evaluated many of Plaintiff Pacific Fisheries Inc.'s ("Pacific Fisheries") arguments in opposition to summary judgment. The court therefore incorporates by reference the analysis section of its March 31, 2009 order. This order deals with two questions: (1) whether the declarations submitted by the IRS are sufficient to exempt documents from disclosure under FOIA on the basis that their release would seriously impair federal tax administration and (2) whether the definition of "tax convention information" is broad enough to encompass information sent from the United States to Russia.

**A.    Serious Impairment of Federal Tax Administration**

Pacific Fisheries argues that the IRS can release the documents it seeks under 26 U.S.C. § 6103(c) which provides:

> **Disclosure of returns and return information to designee of taxpayer.**--The Secretary may, subject to such requirements and conditions as he may prescribe by regulations, disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a request for or consent to such disclosure, or to any

ORDER – 2

> other person at the taxpayer's request to the extent necessary to comply with a request for information or assistance made by the taxpayer to such other person. However, return information shall not be disclosed to such person or persons if the Secretary determines that such disclosure would seriously impair Federal tax administration.

Pacific Fisheries has obtained the consent of the taxpayer to receive his return information. (*See* Declaration of Douglas W. O'Donnell ("O'Donnell Decl.") (Dkt. # 43-2), Ex. B.) The IRS responds that it has made a determination that disclosing the requested information would "seriously impair Federal Tax administration."

After the court declined to grant summary judgment based on Mr. O'Donnell's[1] conclusory first declaration regarding serious impairment, the court gave the IRS the opportunity to "file a more detailed declaration explaining why the release of the documents in question would seriously impair federal tax administration." (March 31, 2009 Order (Dkt. # 54) at 10.) In response, the IRS filed another declaration from Mr. O'Donnell who stated that the purpose of his supplemental declaration was "to further explain my determination that the information withheld in this case pursuant to 26 U.S.C. § 6105 may not be disclosed to [Pacific Fisheries] because such disclosure would harm working relations with Russia and, therefore, would seriously impair federal tax administration within the meaning of 26 U.S.C. § 6103(c)." (Supplemental Declaration of Douglas W. O'Donnell ("Supp. O'Donnell Decl.") (Dkt. # 55) ¶ 2.)

Mr. O'Donnell asserts that the United States and Russia "have developed an ongoing and mutually beneficial treaty relationship" and that such "[t]reaty relationships are a critical element of federal tax administration." (Supp. O'Donnell Decl. ¶ 3.) Based on Mr. O'Donnell's "knowledge and experience, a high degree of mutual respect and trust between treaty partners is necessary for an ongoing and mutually beneficial

---

[1] Mr. O'Donnell is the Director, Treaty Administration and International Coordination, Large and Mid-Size Business Division, IRS. (*See* O'Donnell Decl. ¶ 1.)

ORDER – 3

relationship under an income tax treaty" and therefore "maintaining a high degree of mutual respect and trust with the Russian government is a significant concern of the United States Competent Authority" under the tax convention. (Supp. O'Donnell Decl. ¶ 4.) Mr. O'Donnell contends that IRS policy guidelines require that he refrain from disclosing information to a taxpayer when the treaty partner has requested that the information not be disclosed to the taxpayer. (Supp. O'Donnell Decl. ¶ 6.) Mr. O'Donnell states that "the Russian government confirmed to my office in 2005 its expectation of confidentiality with respect to information received from the Russian government" and "specifically requested that such information not be disclosed to [Pacific Fisheries]." (Supp. O'Donnell Decl. ¶ 7.) In a letter dated December 20, 2008, the "Russian tax authorities . . . reconfirmed this request . . . ." (*Id.*) Mr. O'Donnell believes "that failure to honor Russia's expectations of confidentiality would disrupt the Russian government's confidence in the exchange-of-information process and would chill future cooperation by Russia" which "would make it less likely the Russian government would provide exchange-of-information assistance under the treaty for U.S. tax cases, thereby interfering with the administration of U.S. civil and criminal tax investigations." (Supp. O'Donnell Decl. ¶ 8.) United States confidence in the future cooperation of the Russian government would be diminished and would result in fewer requests under the tax convention, "materially impair[ing] the effectiveness of this treaty." (*Id.*) Mr. O'Donnell also expressed concern that treaty relations with countries who have similar treaties with the United States "could be negatively affected if the United States in this case were found unable to honor its commitment to Russia on confidentiality." (*Id.*)

Pacific Fisheries contends that Mr. O'Donnell's declaration "is self serving speculation and cites no facts which permit the Court to make an independent determination that release of the information would seriously impair federal tax

ORDER – 4

administration." (Resp. to Decl. (Dkt. # 57) at 2.) Pacific Fisheries also attacks Mr. O'Donnell's reliance on IRS policy guidelines as well as his failure to attach the letters from the Russian government and to explain why information exchanged over eight years ago has the ability to impair federal tax administration.

It does not appear that the parties disagree that the Ninth Circuit standard for review of a serious impairment decision is de novo. *See Long v. Internal Revenue Serv.*, 742 F.2d 1173, 1182 (9th Cir. 1984). The IRS has not argued that *Long* does not represent a correct statement of the law in this Circuit. The court concludes that *Long* correctly states the law in this Circuit and relies on it in its analysis of this case. The *Long* court held: "[W]e think that the Commissioner's determination is entitled to deference, we emphasize that the district court's review is still de novo and that the court must satisfy itself, on the basis of detailed and nonconclusory affidavits, that the Commissioner is correct in his belief that disclosure of [the requested information] by these plaintiffs would pose a substantial risk of impairing the collection, assessment, or enforcement of the tax laws." *Id.* at 1182-83. The IRS bears the burden of proof on this issue. *Id.* The *Long* court also noted that: "We do not mean to imply that the Commissioner's determination is to count for nothing. In particularly sensitive areas such as national security cases and cases involving investigatory records of law enforcement agencies, courts have accorded special deference to an agency's detailed affidavits." *Id.* at 1182.

The court disagrees with Pacific Fisheries' characterization of Mr. O'Donnell's declaration as "self-serving" speculation. First, the court likens this case, which involves foreign policy, to those involving sensitive areas like national security. In the national security context, courts have held that declarations are entitled to deference but they "must still describe the justifications for nondisclosure with reasonably specific detail,

ORDER – 5

demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of [] bad faith." *Berman v. Cent. Intelligence Agency*, 501 F.3d 1136, 1140 (9th Cir. 2007). The court acknowledges that cases involving national security issues and those involving foreign affairs are not entirely analogous. The court expects the level of detail in an affidavit in the foreign affairs context to be higher than the level of detail required in the national security context. Nevertheless, the court finds that the national security cases provide a sound framework for an analysis of the issues. Here, Mr. O'Donnell has provided specific justifications for why release of the material at issue would seriously impair federal tax administration. What Pacific Fisheries terms speculation is Mr. O'Donnell's opinion based on his experience as the Director of Treaty Administration, as an IRS employee and from his discussions with others involved with this FOIA request. The court determines that Mr. O'Donnell's declaration is well-grounded in experience rather than speculation and that it provides specific, legitimate reasoning behind the ultimate conclusion that federal tax administration would be impaired.[2] The court further determines that Mr. O'Donnell's conclusions are entitled to some deference as the court is not in a position to independently determine what actions on the part of the United States government would or would not impair treaty relations with another nation. In terms of the other factors, Pacific Fisheries has not brought forth

---

[2] Contrary to Pacific Fisheries' arguments, the declaration clearly explains why release of information exchanged eight years ago has the ability to impair federal tax administration. As Mr. O'Donnell states, release of such information would cause a disruption to the Russian government's confidence in the exchange-of-information process and could have implications reaching far beyond the relationship between Russia and the United States. (*See* Supp. O'Donnell Decl. ¶ 8.)

ORDER – 6

contrary evidence controverting Mr. O'Donnell's justifications or suggesting that there is any bad faith on the part of the IRS.

Pacific Fisheries also attacks Mr. O'Donnell's reliance on Internal Revenue Manual 11.3.25.2(8) which generally provides for release of information received from a foreign tax authority pursuant to a tax treaty, except where, "the IRS or the foreign tax authority providing the information objects to disclosure or if disclosure would seriously impair Federal tax administration." (Supp. O'Donnell Decl., Ex. A.) Pacific Fisheries is correct that the policy can be read to favor disclosure of the information; however, here, the IRS has determined that disclosure would seriously impair federal tax administration. Having determined that the IRS's decision to withhold the documents based on serious impairment rests on sound footing, the court need not address whether Russia did or did not object to the disclosure of the documents. The record, however, does indicate that the Russian authorities have stated their "desire," "expectation" and reaffirmed their "original wish" that the documents at issue remain confidential. (O'Donnell Decl. ¶¶ 6-7; Supp. O'Donnell Decl. ¶ 7.)[3] Although Pacific Fisheries argues to the contrary, the court finds that these communications by the Russian government were appropriate for Mr. O'Donnell to consider and rely upon when making his ultimate determination that disclosure of the documents would seriously impair federal tax administration.

After a review of the declaration and Pacific Fisheries' objections to it, the court determines that Mr. O'Donnell has provided detailed justifications that demonstrate that federal tax administration would be seriously impaired if the documents at issue were released. The court further determines that Mr. O'Donnell's determination regarding

---

[3] Relatedly Pacific Fisheries contends that the IRS should have attached the letters from the Russian authorities discussed by Mr. O'Donnell in his declaration. The court accepts the IRS's explanation that it would have been improper for Mr. O'Donnell to attach the letters because they contain tax convention information.

ORDER – 7

serious impairment is entitled to deference based on the foreign policy interests at stake in this case. The court is satisfied that the IRS's conclusion that federal tax administration would be seriously impaired by release of the documents is correct.

**B.      Information Provided by the United States to Russia**

In the alternative, Pacific Fisheries argues that "at a minimum" it is entitled to disclosure of information provided by the United States to Russian authorities even if it is not entitled to information provided by the Russians to the United States.[4] It contends that the IRS takes too broad a view of the term "tax convention information" as including information that relates to and/or reflects on information that it received from Russia. Pacific Fisheries believes that "the government interprets the scope of legally protected information beyond that allowed by law and views its power to determine what will be disclosed without boundary, so long as it asserts that federal tax administration will be seriously impaired." (Resp. to Decl. at 7.) The IRS responds that the definition of "tax convention information" in the statute is broad enough to cover information relating to and reflecting on information it received from Russia. The court agrees with the IRS.

"Tax convention information" is defined in relevant part as any "other information exchanged pursuant to a tax convention which is treated as confidential or secret under the tax convention." 26 U.S.C. § 6105(c)(1)(E). The IRS also points to the legislative history underlying § 6105 which expresses Congress's intent that "tax convention information" be defined broadly: "The conferees intend that tax convention information would include documents and any other information that reflects tax convention information, including the association of a particular treaty partner with a specific issue

---

[4] The court granted leave for Pacific Fisheries to brief only issues regarding the sufficiency of additional declarations from the IRS. (*See* March 31, 2009 Order at 10.) Although Pacific Fisheries' arguments exceed this scope, the court will briefly address and resolve this argument.

ORDER – 8

or matter." H.R. Conf. Rep. 106-1033 at 1011 (2000).  Here, from the statutory definition and legislative history it is clear that communications that relate to and reflect on information received from Russia are encompassed within the definition of tax convention information.  Pacific Fisheries' bare assertion, without citation to authority, that the definition of "tax convention information" does not include documents relating to and reflecting on information received from a treaty partner, is not enough to overcome the plain meaning found in the definition of "tax convention information" in the statute.  The court determines that documents withheld on this basis are properly withheld under 26 U.S.C. § 6105(a) and 5 U.S.C. §552(b)(3).

### III. CONCLUSION

For the foregoing reasons, as well as the reasons articulated in the court's March 31, 2009 order, the court GRANTS the IRS's motion for summary judgment.

Dated this 6th day of May, 2009.

JAMES L. ROBART
United States District Judge